RIVERA, DEMANDANTE Y APELANTE, *v.* SUCESORES DE LÓPEZ VILLAMIL & Co., DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Segunda, en pleito sobre indemnización de daños y perjuicios.

No. 2104.—Resuelto en marzo 29, 1921.

NEGLIGENCIA CONTRIBUTORIA. — No puede imputarse negligencia contributoria a una persona por dejar de observar si hay peligro al pasar cerca de un *truck* cargado, si dentro de las circunstancias concurrentes no tenía ésta motivo para sospechar de ningún peligro. Sostener que constituye negligencia contributoria por parte de un niño de once años el acercarse a un *truck* cargado en marcha sería trazar una línea mortífera alrededor de los vehículos de motor cargados, fuera de la cual cualquier viandante que dejara de detenerse y tener en cuenta la forma en que está dispuesta la carga para impedir su caída, se arriesgaría a su perjuicio.

ID.—NIÑOS—CONDUCTA DE UN NIÑO ANTE EL PELIGRO.—Aunque existen varias de las más antiguas decisiones en sentido contrario, está bien establecido que la rigurosa regla aplicada a la conducta de un adulto al determinarse si ejercitó debido cuidado para evitar peligro no ha de aplicarse a la conducta

de un niño, pero que la norma por la cual debe medirse la conducta de un niño al resolverse si ejercitó debido cuidado, es el cuidado que ordinaria-mente observan los niños de la misma edad, capacidad, discreción, conoci-miento y experiencia bajo circunstancias iguales o semejantes.

Los hechos están expresados en la opinión.

Abogado de la demandante: *Sr. E. López Tizol.*

Abogados de la demandada: *Sres. Chas. Hartzell* y *F. Ramírez.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

La demanda presentada en este caso alega entre otros particulares lo siguiente:

"4°. Que según información el día 30 de diciembre de 1917 a eso de las 3 de la tarde, iba el 'vehículo pesado de motor' No. 829, pro-piedad de la demandada, guiado por el *chauffeur* empleado de la misma y que en tal carácter actuaba, Ramón Gemaro, placa No. 9323, en dirección de sur a norte por la parada 3 de Puerta de Tierra de esta ciudad, conduciendo un cargamento de 125 sacos de arroz para el establecimiento mercantil de la demandada al cuidado de varios de sus empleados que como tal actuaban en el momento y al cruzar por sobre la vía de los carros eléctricos, frente al paseo de 'Cova-donga,' y debido al solo descuido, culpa y negligencia de la deman-dada puesto que el predicho vehículo no llevaba las estacas o barandas necesarias a su alrededor, varios de dichos sacos se cayeron cogiendo al hijo de la demandante Aurelio Salvat que en aquel momento pa-saba por allí, y sin que mediara por parte de éste culpa, negligencia ni descuido, toda vez que iba por el lado izquierdo de la calle, que es sitio seguro y resguardado, produciéndole varias contusiones en el cuerpo y la rotura o fractura de la tibia del pie derecho de las que fué curado en la Sala de Socorros, teniendo que permanecer recluído en cama por espacio de más de un mes."

En contestación a esto alega la demandada lo siguiente:

"3°. Que niega el hecho cuarto de la demanda en la forma en que está redactado y a su vez alega, que según información que creo cierta, el 30 de diciembre de 1917 como a las tres de la tarde, mientras el *truck* propiedad de los demandados, guiado por el *chauffeur* Ramón Gemaro, se dirigía desde el muelle de 'San Antonio' a San Juan y al pasar por la parada 3 de Puerta de Tierra, cargado de sacos de arroz,

un muchacho como de 10 a 11 años de edad corría detrás del *truck* sujeto al mismo y tratando de subirse por la parte trasera del mismo, hizo que uno de los sacos de arroz que pesan más o menos 100 libras, le cayera sobre un pie causándole algunas lesiones de poca importancia de las que quedó completamente curado a los pocos días. Que este accidente ocurrió debido exclusivamente a la negligencia y falta de discreción del niño, pues sin necesidad ninguna y solo como una diversión, iba corriendo detrás del *truck* y tratando de montarse a él, causando así la caída del saco. El demandado, por medio de sus empleados en dicho *truck* obró con el mayor cuidado y diligencia.''

La alegación del apelante es que la sentencia es contraria a la prueba, y el error así especificado se subdivide en el alegato en la forma siguiente:

''(*a*) Error de la corte al no resolver el caso apreciando en conjunto la prueba practicada y dando su fallo de acuerdo con ella.

''(*b*) Error por no haber resuelto el caso de acuerdo con la preponderancia de la prueba.

''(*c*) Error sosteniendo negligencia contributiva sin haberse probado todos los elementos que la constituyen.

''(*d*) Error tomando por causa próxima la causa remota y por ésta aquélla.

''(*e*) Error atribuyendo negligencia contributiva a un menor que carece del discernimiento necesario para que pueda atribuírsele la misma.

''(*f*) Error al considerar como negligencia contributiva el simple hecho de que algún testigo dijera que el niño tenía la intención de subirse al carro, cuando ni el hecho mismo de haberse subido a él exoneraba de responsabilidad al demandante.

''(*g*) Error al no tomar en consideración la doctrina del *attractive nuisance,* ni la del *turnable cases.*

''(*h*) Error al no aplicar la doctrina que acabamos de citar sostenida por ese Tribunal Supremo en la pág. 636 del volúmen 18 de las decisiones de Puerto Rico.''

La conclusión a que llegó la corte inferior y las razones que le sirvieron de fundamento según han sido expresadas por el juez sentenciador son las siguientes:

''Tal vez con la sola prueba del demandante hubiéramos podido

resolver este caso si se hubiera presentado por la demandada una moción de *nonsuit.*

"No basta que unos cuantos testigos afirmen- un hecho y que en sus declaraciones estén más o menos contestes; lo que importa es que el hecho tenga por lo menos apariencias de verosimilitud.

"La versión de los testigos del demandante es incomprensible para nosotros, y nunca pudimos explicarnos cómo un número mayor o menor de sacos llenos de arroz, cuyo peso no les permitiría caer en un punto muy distante de aquél de donde se desprendieron, fueran a dar alcance a una persona que cruzara por detrás del *truck* que *transportaba* esos sacos y que por lo mismo que no caminaban ambos en una misma dirección cada vez tenían que estar más distantes el uno del otro.

"Nuestras dudas nos la aclaró el testigo Allende refiriéndonos el hecho del modo más lógico: El niño Salvat corría detrás del *truck* con la intención de subirse a él por la parte trasera y en ese momento ocurrió el accidente que originó su desgracia.

"Si él no hubiera realizado ese acto o si no hubiera intentado realizarlo sin necesidad, sin derecho para ello, no hubiera sufrido el perjuicio que alega para recobrar indemnización por un daño que él se procuró por su imprudencia."

Al ocurrir el accidente que dió origen a esta controversia, el *truck* llevaba de 100 a 125 sacos de arroz que pesaban 100 libras cada uno y media docena o más de hombres, además del *chauffeur.* La prueba del demandante en el juicio estableció un fuerte caso *prima facie* por testigos oculares, quienes con una sola excepción eran empleados de la demandada que iban en el *truck* al ocurrir el accidente. Todos estos anteriores empleados con la sola excepción de Allende quedó demostrado que no trabajaban con la demandada en la fecha del juicio, aunque no hay nada que indique mala voluntad o motivo de resentimiento por parte de ninguno de dichos ex-empleados. Uno de éstos explica que sólo trabaja durante los meses de invierno y que los demandados lo mandan a buscar cuando lo necesitan. Allende fué el último testigo en declarar a favor del demandante y aunque no se ha formulado ninguna queja por sorpresa en su de-

claración, es difícil concebir por virtud de qué teoría la demandante lo hubiera llamado como testigo de haber sido posible saber por adelantado su manifestación y opinión en cuanto al proceder y objeto del muchacho en correr detrás del *truck,* ó que el juez sentenciador tomaría tal manifestación y opinión como base para una sentencia adversa.

Aurelio Salvat tenía once años y trece días de edad cuando sufrió la fractura de su pierna.  Tanto él como sus padres nacieron y hasta la fecha de la muerte de su padre en noviembre de 1911 vivieron en un pueblito en la montaña.  El padre era un trabajador y la madre lavandera.  No consta la fecha en que la viuda trajo al niño a San Juan.  Fuera de la circunstancia de que la madre y el hijo vivían en Puerta de Tierra en la fecha del accidente no hay nada que muestre qué oportunidades pudo haber tenido el hijo para observar y adquirir alguna experiencia en cuanto al peligro que había en cruzar la calle por detrás de un *truck* que va completamente cargado, o en correr tras del mismo mientras iba en marcha.  Aún de acuerdo con la declaración de Allende y la de un testigo de la demandada que hace una manifestación algo parecida, el demandante no era un transgresor, cualquiera que haya sido su intención al correr detrás del *truck,* si es que corrió tras él; y dando por sentado que la declaración de estos dos testigos sea cierta, su pronta obediencia a la orden prohibiéndole realizar el propósito que se le imputa, si no es cosa que está a su favor, muy difícilmente puede considerarse como circunstancia que le incrimina.  El muchacho tenía igual derecho que el *truck* a estar en el camino y por lo menos está sujeto a discusión si el acto de cruzar inmediatamente por detrás, o de aproximarse por la parte trasera a un carro cargado que va por una calle de la ciudad asfaltada o afirmada, sin examinar minuciosamente la manera en que el mismo se carga o como se asegura la carga para evitar su caída, podría considerarse como negligencia contributoria en un adulto.

"No puede imputarse negligencia a una persona por dejar de observar si hay peligro si dentro de las circunstancias concurrentes no tenía ésta motivo para sospechar de ningún peligro." *Rosado* v. *Ponce Railway & Light Co.,* 20 D. P. R. 564, y autoridades citadas.

El muchacho a la fecha del juicio o sea dos años después del accidente, tenía doce años y estaba en el primer grado en la escuela. El mismo declara que no conoce las letras, pero los números sí, y que dos y dos suman cuatro. Tampoco revela esta declaración ni ninguna parte de los autos que fuera de sus conocimientos escolares y con anterioridad a la fecha del accidente, su experiencia había sido tal que había desarrollado facultades de observación y juicio más allá de lo que pudiera esperarse de un niño cualquiera de once años de edad.

"Aunque existen varias de las más antiguas decisiones en sentido contrario, está bien establecido que la rigurosa regla aplicada a la conducta de un adulto al determinarse si ejercitó debido cuidado para evitar peligro no ha de aplicarse a la conducta de un niño, pero que la norma por la cual debe medirse la conducta de un niño al resolverse si ejercitó debido cuidado, es el cuidado que ordinariamente observan los niños de la misma edad, capacidad, discreción, conocimiento y experiencia bajo circunstancias iguales o semejantes." * * * Nota al caso de *Jacobs* v. *Koelher Sporting Goods Co.,* L. R. A. 1917. F. p. 7–13.

"Como revela la regla general arriba citada respecto a lo norma por la cual ha de medirse la conducta de un niño, la ley requiere al determinarse la cuestión de negligencia contributiva, que se considere el desarrollo mental, conocimiento, capacidad y experiencia del niño en particular. Esto es, la cuestión no es si el niño procedió como hubiera procedido generalmente un niño prudente de su edad, sino si actuó como un niño de su edad y capacidad, discreción, conocimiento y experiencia hubiera ordinariamente actuado en las mismas o semejantes circunstancias. En algunos casos se indica esta distinción. Por ejemplo, en un caso de Alabama se dijo: 'No existe ninguna regla inflexible por la cual podamos determinar la capacidad de todos los niños bajo todas las circunstancias para observar y evitar el peligro; cada niño está obligado a hacer uso de su razón y ejercitar el grado de cuidado y precaución posible. Un niño puede entender y

darse cuenta de un peligro y otro no.  Otro niño de la misma edad que el primero puede comprender el peligro que aquél no comprende y ser insensible al peligro conocido por el primero.  Un niño criado en la ciudad puede perfectamente conocer y evitar el peligro de los tranvías, ferrocarriles, y calles aglomeradas, pero ser insensible a los peligros de una segadora mecánica o máquina trituradora, de una azuela, o guadaña, etc.; mientras que un niño de la misma edad, y de inteligencia corriente, educado en el campo entendería y comprendería enteramente los peligros de la ·última clase, pero desconocería completamente los primeros.  Algunos. niños a la edad de siete años comprenden mejor el peligro de los trenes y carros que otros de catorce años.  Por tanto, la capacidad, inteligencia, conocimiento, experiencia y discreción del niño son siempre circunstancias probatorias.  No existe ninguna verdadera norma por la que la corte o jurado pueda resolver si determinado niño, en un caso particular, ejercitó aquel grado de cuidado que la ley requiere.'  Y en una reciente decisión de Utah se resolvió que se exige al niño. usar **aquel** grado de cuidado que una persona de su conocimiento, experiencia y comprensión ejercitaría ordinariamente bajo tales circunstancias, el cual puede ser mayor que el exigido a un niño cualquiera de la misma edad, si su inteligencia y conocimiento del daño son superiores a la de un niño cualquiera de esa edad.  Otras decisiones se pronuncian en el mismo sentido.''  *Idem,* pág. 29.     '

Claramente que la corte inferior prescindió por completo del principio que debe regular los casos de esta clase.

Ni en manera alguna se pone en tela de juicio por el juez sentenciador la veracidad de los testigos del demandante, excepto en cuanto al fundamento de existir cierta incompatibilidad entre sus declaraciones y un criterio tergiversado de los hechos materiales.  La caída de un saco de arroz puede o no estar regulada en su curso hacia abajo única y exclusivamente por la ley de gravedad.  El promedio de aumento en distancia dentro de un período especificado de tiempo entre un vehículo que va hacia adelante y un viandante que cruza el camino por detrás de tal vehículo, ya diagonalmente o en ángulos rectos a la línea que lleva el vehículo en marcha, debe depender en gran parte del elemento de velocidad.  La dificultad siempre es no tanto descubrir el principio en-

vuelto como lo es aplicar debidamente ese principio a los hechos en cuestión.

Se trata aquí de un *truck* completamente cargado, que va despacio y que acababa precisamente de doblar la esquina de una calle estrecha y que solamente había seguido pocos metros cuesta arriba por la vía del carro eléctrico en la parte superior de esta corta pendiente. En este punto, ya por la sacudida o retroceso de los muelles, o por ambas cosas que ocurrieron al caerse las ruedas traseras del *truck* dentro de una zanja, o por alguna otra depresión del camino, resultó que se perdió parte de la carga.

Estos hechos, así como la prueba, demuestran fuera de duda que el *truck* cuya velocidad máxima parece no haber sido más de once millas por hora, iba tan despacio si no poco más ligero que el paso de un hombre, o como iría un muchacho de once años cuando se le envía a un mandado. La declaración de un testigo de la demandada de que ''había costumbre de echarle cien sacos de arroz al carro, y no podía llevar más,'' de ser cierta puede indicar que el cálculo del número de sacos en 125, hecho por los testigos de la demandante no es tan conservador como podría serlo, pero refiriéndose a la capacidad total de la carga no ofrece duda alguna en cuanto a la manifestación anterior acerca de la probable velocidad del vehículo. Y si un viandante que se aproxima a la rueda trasera al pasar por su lado estuviera cruzando una calle por detrás de dicho vehículo, fácilmente podría ser cogido por un objeto que se desprendiere de la parte arriba de la carga. Y si la persona tomara una dirección más o menos diagonal en el sentido en que va el *truck* esto aumentaría la posibilidad de ponerse en contacto con tal objeto.

En favor de la brevedad nos abstenemos de discutir los numerosos elementos y agentes que han concurrido y que no fueron tomados en consideración por la corte sentenciadora, los cuales se presentarían inmediatamente a cualquier ima-

ginación juiciosa al revisar la prueba y que bajo uno u otro aspecto de ésta han podido producirse para evitar el descenso perpendicular del saco de arroz en particular que golpeó al demandante. Sea o no como sugiere la prueba de la demandada sólo unos pocos, o no más de uno o dos sacos fueron desprendidos de la parte más alta de la carga, o si como afirman la mayor parte de los testigos, fué la estiba de sacos de más atrás la que se cayó, o si el muchacho estaba a dos metros de la parte trasera del *truck,* que fué la distancia máxima indicada por los testigos, o a un metro de él, que es el mínimum fijado por Allende; o si el saco que fracturó la pierna al muchacho cayó en ángulo recto a la horizontal, o se desvió algo de la perpendicular o describió una curva parabólica en el curso de su trayectoria; o si el demandante cruzaba el camino por detrás del *truck,* o corría detrás de éste, con o sin la intención de montarse, no son éstas cuestiones de importancia vital dentro del criterio que sustentamos del caso.

No hay prueba alguna de negligencia contributoria fuera de las circunstancias ya indicadas y la prueba de tal negligencia es una cuestión de defensa que debe alegarse y probarse por la demandada. *Rosado v. Ponce Railway and Light Company, supra; González* v. *Malgor, Luiña & Co.,* resuelto en febrero 14 de este año, (pág. 105).

El único testigo de la demandante que declaró sobre el particular y cuya declaración no es más favorable a la teoría de la defensa que lo es la de Allende, declara que estaba sentado en medio del carro, encima de la carga. Su relato no sólo no demuestra de qué medios se valió para ver tanto desde el sitio en que de tal modo se colocara, sino que en conjunto sugiere la idea de que él está haciendo conclusiones de lo que vió y oyó, más bien que narrando los hechos. Dicha declaración en su parte pertinente es como sigue:

" * * * que el accidente ocurrió al pasar por la vía del trolley cuando venían de San Antonio, subiendo la cuesta, y el muchachito

arrancó a correr y al llegar a la vía el muchachito iba a subirse al carro y en ese tiempo al caer el carro en la zanja dió un tumbo y se cayó un saco y lo cogió; que vió al niñito cuando los muchachos gritaban que no se arreguindara; que los muchachos que gritaban eran los que venían trabajando con él en el carro; que supone que el niño se iba a arreguindar detrás del carro porque iba corriendo detrás de él y que lo supone solamente porque iba corriendo para arreguindarse; que el niño estaba cerca porque cuando cayó el carro que dió el tumbo, cayó un saco y lo cogió porque estaba cerca como a media vara; que el niño estaba casi cerquita del *truck,* pero que como el *truck* iba andando no se puede apreciar la distancia; que él lo vió venir en dirección hacia el carro, y que el muchacho no cruzó por detrás del carro; que la subida, es así; esta es la vía del trolley y el muchacho venía corriendo detrás del carro y al pasar el carro la vía, cuando montó en la zanja, dió un brinco y se cayó el saco; que tenía estacas en la parte de atrás del carro; que esos *trucks,* tienen por detrás un ancho de baranda y baranda que coge cinco sacos extendidos de un lado a otro; que a ese carro le ponen detrás tres palos para que no se caigan los sacos, pero que ese día le faltaba una estaca nada más, pero no estorbaba; que está seguro que le dijeron al niño que no se arreguindara y por eso fué que no se arreguindó; que sintió el grito y miró para atrás y ya el muchacho había caído en el medio de la vía; \* \* \* que vió el niño cuando venía corriendo; que el testigo venía mirando para atrás sentado; que él cree que el niño iba a coger el carro porque iba corriendo detrás del carro.''

Sin duda alguna que en muchos casos una tentativa frustrada o abandonada para cometer un acto en violación de la ley (*trespass*) no solamente contribuiría sino hasta podría constituir la causa próxima del accidente, pero a falta de tal relación casual el motivo parece ser inmaterial. Una mera actitud mental o propósito de intentar realizar una cosa irreflexiva, difícilmente puede decirse que convierte en negligencia contributoria el acto de andar o correr un viandante que de otro modo ejercita el derecho legítimo que tiene de acuerdo con la ley al uso de los caminos públicos o calles de una ciudad. Y si fuera negligencia contributoria por parte de un niño de once años de edad acercarse a un vehículo cargado en la calle, entonces, *a fortiori,* un adulto que así

proceda sería asimismo si no mucho más culpable.   Sostener esto sería trazar una línea mortífera alrededor de los vehículos de motor cargados, fuera de la cual cualquier viandante que dejara de detenerse y tener en cuenta la forma en que está arreglada y asegurada la carga para evitar su caída, se arriesgaría a su perjuicio.   Esto no queremos hacerlo.

. Con excepción de las cuestiones ya discutidas no existe verdadero conflicto en la prueba.

Resulta, pues, que por no darse la debida consideración a la ley que regula la cuestión de negligencia contributoria cuando se imputa ésta a un niño de poca edad y no apreciarse los elementos determinantes más importantes para llegar a una conclusión basada en una ley física abstracta más bien que en hechos, viciándose así la conclusión a que se llegó, el caso no fué resuelto por sus méritos.   Dentro de las circunstancias, preferimos devolver las actuaciones para la celebración de un nuevo juicio que no dictar sentencia definitiva en primera instancia por los hechos como constan en los autos tal como se encuentran.   Y habiéndonos decidido por este medio nos abstenemos de toda ulterior discusión o de expresar opinión alguna sobre los méritos, o acerca de las demás cuestiones sugeridas en los señalamientos de error, dejando a las partes y a la corte inferior libres para estudiar cuidadosamente y resolver todas aquellas cuestiones envueltas que puedan considerarse pertinentes a la cuestión litigiosa aquí suscitada.

La sentencia apelada debe ser revocada.

*Revocada la sentencia apelada y devuelto el caso para ulteriores procedimientos.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.