FLORES, DEMANDANTE Y APELADO, *v.* SUCESORES DE PÉREZ
HERMANOS, DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección Segunda, en pleito sobre daños y perjuicios.

No. 2416.—Resuelto en julio 29, 1921.

NEGLIGENCIA AL MANEJAR UN AUTOMÓVIL—DAÑOS Y PERJUICIOS.—Una alegación
general de negligencia en el manejo de un vehículo, a falta de una solicitud
para que se detallen más los hechos, es una alegación suficiente.

ID.—ID.—AVISO NECESARIO.—Cuando un agente peligroso como un vehículo de
motor retrocede o va a retroceder, el conductor debe primero dar aviso y
asegurarse de que puede hacerlo sin causar daño a las personas o a la pro-
piedad. La ley prescribe que los *trucks* lleven un observador o que estarán
provistos de un espejo que permita al conductor mirar hacia atrás, pero aun-
que en este caso los apelantes no cumplieron con la ley, el mero cumplimiento
no les eximiría de responsabilidad.

ID.—MEDIDA DE LOS DAÑOS.—La indemnización por daños es compensatoria y la
determinación de la cuantía nunca depende de la capacidad de la demandada
para pagar o de su grado de negligencia; depende más bien de la capacidad
del lesionado y sus sufrimientos y quizás indirectamente de la mayor o me-
nor riqueza de la comunidad.

ID.—ID.—Las cortes de apelación pueden determinar la cuantía de la indemniza-
ción especialmente cuando no hay otro daño permanente que la pérdida de
un pie o una pierna, como en el presente caso.

ID.—ID.—Al fijar la cuantía de los daños merecen considerarse: los gastos de
la curación, el valor del tiempo perdido, el sufrimiento físico y mental y la
rebaja permanente en la capacidad para ganar dinero, siendo este último
elemento el más variable al determinar una compensación. Las cortes no
hacen distinción entre un joven de 21 años y un menor, y éste tiene a su
favor todas las presunciones de que será una persona de condiciones norma-
les y en condiciones de ganar lo que dicha persona ganaría.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Chas. Hartzell* y *F. Ra-
mírez de Arellano.*

Abogado del apelado: *Sr. J. H. Brown.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Los apelantes en este caso no presentaron un señalamiento
de errores sino que discutieron los alegados errores (*seria-
tim*) en su alegato. El apelado en cambio resumió las cues-
tiones contendidas. La primera se refiere a la suficiencia
de la demanda y principalmente a si hubo la debida alega-
ción de negligencia. Hubiera sido mejor si la demanda hu-

biera alegado que el automóvil de la demandada al retro-
ceder negligentemente lesionó al demandante, pero nosotros
con la mayoría de las otras cortes hemos resuelto general-
mente, que una alegación general de negligencia en el ma-
nejo de un vehículo a falta de una' solicitud para que se de-
tallen más los hechos es una alegación suficiente. *House
v. Meyer,* 100 Cal. 592, 35 Pac. 308, 29 Cyc. 570, 571; *Cun-
ningham* v. *Los Angeles Railroad Company,* 115 Cal. 561,
47 Pac. 452.

Convenimos con el apelado y la corte inferior en que prác-
ticamente no hubo ninguna prueba de negligencia contribu-
toria. Según la corte, y no vemos razón alguna para variar,
el muchacho no tenía ningún indicio de que el *truck* que
estaba detenido pudiera retroceder y nosotros asimismo no
vemos que la demandada haya probado que algún aviso se
diera al niño de que el *truck* iba a retroceder.

Los apelantes también alegan que la prueba no revela
negligencia por parte de la demandada y que el peso de la
misma está decididamente a su favor. La ley es clara de
que cuando un agente peligroso como un automóvil retro-
cede o va a retroceder, el conductor debe primero asegurarse
de que puede hacerlo sin causar daño a las personas o a la
propiedad. La ley prescribe que los *trucks* lleven un obser
vador o que deberá estar provisto de un espejo que permita
al conductor ver si hay alguien detrás de la máquina, pero
aunque creemos que los apelantes no cumplieron con la ley,
el mero cumplimiento no eximiría necesariamente a un de-
mandado de responsabilidad. Lo esencial es que la gente
que está detrás del *truck* sea avisada antes de ponerse en
movimiento el *truck.* Aunque algunos de los testigos de la
demandada declararon tendente a demostrar que el conduc-
tor del *truck* avisó primero al niño y a los demás que se
retiraran de detrás del automóvil, el peso de la prueba es
que el conductor, si bien declaró lo contrario, nunca se bajó
del *truck* y que nada les hizo saber a los muchachos. La

manifestación del conductor del *truck* y de uno de sus testigos de que se les dió aviso a los muchachos no está sostenida por el resto de la prueba y no nos convence.

Dudamos, además, cuando se trata de niños, si sería suficiente un mero aviso, pero la regla es que antes de que una máquina se ponga en movimiento el conductor debe tener bastante motivo para creer que no hay ninguna persona o propiedad en su camino. El juez de la corte inferior estaba tan convencido del incumplimiento del conductor del *truck* que dijo que en su práctica judicial pocas veces había visto una prueba que de modo más concluyente satisfaga su conciencia.

El único fundamento de error que queda es que la sentencia de $17,000 es excesiva. El muchacho de once años tuvo que sufrir la amputación de un pie arriba del tobillo. La regla en todos los Estados Unidos así como en esta jurisdicción es la de dar una compensación a la persona lesionada. La determinación de la suma, como cuestión legal, nunca depende de la capacidad de la demandada para pagar dicha suma o de su grado de negligencia. Las cortes han tenido la tendencia de decir que la pérdida de una pierna o brazo, u otro miembro del cuerpo, en cierto sentido difícilmente puede ser remunerada y frecuentemente las cortes deberán resolver si un veredicto es o no excesivo teniendo en cuenta otros veredictos en el mismo Estado. Necesariamente que en el mismo Estado los veredictos variarán en las diferentes comunidades, dependiendo esto de la actitud de los jurados de la comunidad en particular. Se infiere de aquí que en Estados o comunidades de grandes riquezas los veredictos serán mayores que lo que serían en comunidades más pequeñas o pobres. No dudamos si conscientemente o no la riqueza de una comunidad desempeña realmente un papel al determinar la cuantía de un veredicto tanto por el jurado en primer lugar como por las cortes de revisión.

La regla es que un jurado es el juez de los hechos y por

tanto las cortes de revisión son muy rehacias a dejar sin efecto los veredictos a menos que sea por motivos de pasión o prejuicio.  Por otra parte, por lo menos una corte ha dicho que puede inferirse pasión o prejuicio del carácter excesivo de un veredicto.  Frecuentemente cuando los veredictos han sido crecidos las cortes los han caracterizado así al sostenerlos y también han comentado acerca del hecho de que el veredicto probablemente era mayor del que hubiera rendido el juez sentenciador o hubiera sido concedido por los jueces de revisión de haber sido los juzgadores.  La idea en los Estados Unidos de que el jurado es el juez de los hechos es tan fuerte que las cortes tienen que ver un exceso considerable antes de intervenir.  Cuando un juez juzga un caso como en Puerto Rico, por lo general se supondría que estaría menos influído por pasión o prejuicio que un jurado. Sin embargo, cuando los hechos no admiten duda en cuanto al daño, la corte de revisión tiene prácticamente el mismo derecho a considerar los fundamentos de la compensación que el que tenía la corte inferior.  Dadas las circunstancias indiscutibles en que el demandante mismo se encuentra y el daño sufrido la corte de apelación está en buenas condiciones para limitar la cuantía de la indemnización especialmente cuando no hay otro daño permanente que la pérdida de un pie o una pierna, como en el presente caso.

La medida de los daños ha sido diversamente expresada y tal vez una medida satisfactoria fué la indicada en el caso de *Louisville Gas Company* v. *Fuller,* 92 S. W. 566, como que es el gasto de la curación, el valor del tiempo perdido, la razonable compensación por el sufrimiento físico y mental y por la rebaja permanente en la capacidad para ganar dinero.

En el caso de *Texas & New Orleans Railroad Company* v. *Brouillette,* 130 S. W. 890, había un niño de dos años y siete meses de edad.  La corte dijo "que él sufrirá mental y materialmente en el futuro, es una conclusión justificada

por los hechos probados. Pero no hubo lesión física alguna con excepción de la pérdida de una pierna. Con excepción de ésto él es un niño saludable, bien desarrollado y normal. Verdad es que estará privado de muchos goces y privilegios de la niñez y en la edad viril será seriamente obstaculizado en la carrera de la vida; pero creemos que el veredicto y sentencia fueron por una suma mayor que lo que la prueba justificaba'' y la corte rebajó el veredicto de $30,000 a $20,000.

En Virginia no se consideró excesiva la suma de $18,000 por la pérdida de una pierna, incluyendo $3,000 por honorarios del médico, *Norfolk Southern Railroad Company* v. *Crocker,* 84 S. E. 681. La suma de $15,000 no se consideró excesiva en el caso de *Bugge* v. *Seattle Electric Company,* 103 Pac. 826 por la pérdida de un pie. La demandante era una joven de 31 años de edad, soltera y ganaba $35 como ama de llaves, con casa y comida que importaba de $30 a $40 mensuales. La cuenta del médico fué un poco más de $500. La cantidad de $17,000 no se estimó excesiva en el caso de *Colorado Springs, etc., Ry. Co.* v. *Kelley,* 176 Pac. 307, por la pérdida de un pie, cuando una joven de veinte y cuatro años ganaba $40 mensuales como taquígrafa. La corte resolvió que no podía decirse que esto tiene que marcar su capacidad para trabajar durante toda su vida. La suma de $15,000 se estimó que no era excesiva para un muchacho de catorce años en el caso de *Texas, Etc.,* v. *McLeed,* 131 S. W. 311, y veredictos tan crecidos como de $22,500 han sido sostenidos por las varias cortes del Estado de Nueva York. Por otra parte Missouri ha fijado un tipo de compensación por lesiones en una pierna o pie que no excederá de $10,000, y en Kentucky generalmente se ha hecho lo mismo. Si revisa uno los casos de Louisiana como aparecen en el Segundo Digesto de Louisiana bajo el título de Daños, párrafo 105, puede ver uno que un veredicto de más de $10,000 en ese Estado sería considerado excesivo. En el año 1910 en el caso de *Williams* v. *W. R. Pickering Lumber Company,*

125 La. 1087, la corte rebajó un veredicto de $20,078, por daños y perjuicios sufridos por un guardafreno a $12,000 y en este caso el demandante había perdido un brazo y una pierna. Después de revisar los casos donde veredictos semejantes habían sido sostenidos por grandes sumas en Louisiana, la corte dijo que el abogado del demandado citó casos en los que veredictos por pérdida de un miembro del cuerpo de $2,000 a $6,000 habían sido confirmados. ''Admitimos libremente,'' procedió la corte, ''que los casos citados no pueden ser harmonizados y que no hay reglas de ley sobre la materia.'' En el año 1911 esa corte resolvió que la suma de $2,500 era una compensación inadecuada para un muchacho de veinte meses de edad por la pérdida de una pierna hasta más abajo de la rodilla y el magullamiento de carne que en la curación dejó malamente cicatrizado el tejido en el otro pie, ''aún cuando las circunstancias son tales que las condiciones pueden mejorar con el uso de un miembro artificial,'' y la suma fué aumentada a $5,000. *Danna* v. *City of Monroe*, 129 La. 138. En 1913 la corte en el caso de *Bell* v. *Houston & S. R. Co.*, 132 La. 88, resolvió que una sentencia por $10,000 por la pérdida de un pie era excesiva y sería rebajada a $7,500. La corte en 1912 había dicho que en vista de la depreciación en el poder del dinero para comprar, la suma de $7,500 no era demasiado como concesión para un hombre por la pérdida de un pie, quien dependía de su trabajo manual para su subsistencia, subiendo la sentencia a esa suma. *Cross* v. *Lee Lumber Company*, 130 La. 66. En el caso de *El Paso Electric Railway Company* v. *Allen*, 208 S. W. 739, la corte después de sostener un veredicto por $15,000, donde un miembro de un niño fué magullado hasta la rodilla siendo necesaria la amputación en la articulación de la rodilla, revisa los casos de Texas e indica que su revisión de los veredictos dependerá en gran parte de la capacidad para ganar dinero. En el caso de *Standard Oil Company* v. *Titus*, 219 S. W. 1077, la Corte de Apela-

ciones de Kentucky resolvió que $15,200 no era una compensación excesiva para un guardafreno de 35 años de edad por una lesión tal que requiere la amputación de la pierna ocho pulgadas más abajo de la rodilla. La corte dijo, "Puesto que el costo de vida ha subido grandemente y el valor de un dólar para comprar es mucho menos de lo que era, opinamos que el veredicto no es excesivo." Véase también 14 L. R. A. 677, 17 C. J. 1104–1110.

La revisión de los casos que hemos hecho nos convence de que el elemento más variable al determinar la compensación de una persona es su capacidad para ganar. Las cortes no hacen ninguna distinción particular entre un joven de veintiún años y un menor. Un niño tiene a su favor todas las presunciones de que será una persona de condiciones normales y en condiciones de ganar lo que dicha persona ganaría.

Si examinamos, pues, los hechos de este caso, a la luz de la jurisprudencia establecida por los tribunales del continente, y fundada en los mismos accidentes tendremos que reconocer que dichos tribunales basándose en hechos semejantes en algunas ocasiones han concedido indemnizaciones superiores a la suma de diez y siete mil dólares y en otros inferiores a esa suma.

Si examinamos los hechos de este caso a la luz de nuestra propia jurisprudencia, encontraremos que en ninguno de los casos resueltos hasta ahora se ha acordado un veredicto en casos similares que ascienda a la indicada suma, aunque esta misma cuestión nunca ha sido enteramente presentada. La tendencia general de los veredictos en las cortes insulares ha sido muy conservadora en materia de la cuantía de las indemnizaciones, quizás consciente o inconscientemente siguiendo la tradición y teniendo en cuenta que el país en general no es rico. Hay una gran diferencia entre la riqueza *per capita* entre los ciudadanos del continente y de la Isla.

Considerando siempre todas estas cosas y el debido res

peto a la sentencia de la corte inferior que tuvo ante sí al niño y pudo juzgar en cierto modo sus posibilidades, rebajaremos la sentencia a la suma de $12,000, pero sin querer indicar con esto que esta cantidad será un precedente aún en casos de accidentes semejantes.

La sentencia apelada debe ser modificada en la forma indicada y confirmada en sus demás particulares.

> *Modificada la sentencia apelada en el sentido de rebajar la indemnización a $12,000 y confirmada en los demás particulares sin especial condenación de costas.*

Jueces concurrentes: Sres. Asociados del Toro y Hutchison.

El Juez Presidente Sr. Hernández y el Juez Asociado Sr. Aldrey firmaron "Conformes con la sentencia menos en la cuantía de la indemnización, pues opinamos que no debe pasar de $5,000."