Rivera, Demandante y Apelante, *v.* Currá, Demandado y Apelado.

No. 3306.—*Visto:* Noviembre 18, 1924. *Resuelto:* Febrero 3, 1925.

Daños y Perjuicios—Negligencia del Chauffeur.—El *chauffeur* de un *truck* que al ponerlo en movimiento lo hace de tal suerte que la parte posterior de la plataforma invade la acera y causa la muerte de una persona que caminaba por ésta, es culpable *prima facie* de negligencia. Era deber del *chauffeur* y de su auxiliar cerciorarse de que la acera estaba libre.

Sentencia de *Charles E. Foote*, J. (Primer Distrito, San Juan),
   declarando sin lugar la demanda, con costas. *Revocada y dic-*
   *tada otra en su lugar.*

*E. H. F. Dottin*, abogado del apelante; *F. B. Fornaris* y *S. Suau*,
   abogados del apelado.

El Juez Asociado Señor Franco Soto, emitió la opinión del
   tribunal.

Esta es una acción de daños y perjuicios establecida por
el padre de un menor, la que funda en la negligencia del
chauffeur del demandado quien manejaba un truck de carga
y arrolló a dicho menor produciéndole la muerte.

Las alegaciones 4ª y 5ª de la demanda que describen cómo
ocurrió el accidente y donde se imputa la negligencia del de-
mandado, literalmente dicen:

"IV. Que el demandante ha sido informado y cree y alega ·por
información y creencia que el día 30 de octubre de 1922 y alrededor
de las tres y media de la tarde de dicho día el dicho Francisco Currá
placa No. 10856 que actuando dentro de los límites de su mandato
(acting within the scope of his duty) como tal empleado y sirviente
del demandado José Currá guió el dicho *truck* tan negligentemente
y aproximándose tanto a la acera que llegándole por detrás con el
borde de la plataforma le dió por la aspalda un golpe al niño Jorge
Rivera quien acababa de salir de la escuela y se dirigía a su hogar
sito en el lugar denominado 'Tras Talleres', sección Sur del barrio
de Santurce de este término municipal, caminando dicho niño por
la acera Oeste de la calle 'Cerra' y el golpe que le infirió el *truck*
al citado niño fué tan inesperado y tan violento que lo derribó y
cayó a la calle y le pasó por encima de su cuerpo la rueda derecha
trasera del indicado *truck* causándole al niño la muerte instantá-
neamente.

"V. El demandante alega que la muerte de su citado hijo Jorge
Rivera se debe sólo y exclusivamente a la culpable negligencia del
demandado José Currá por medio de su empleado y sirviente Fran-
cisco Currá, placa No. 10896 por haber éste arrimado el citado *truck*
del demandado tan cerca de la acera que pudo agolpear, derribar y
matar al citado niño Jorge Rivera que caminaba por la acera sin te-
ner motivo de sospechar que estuviera en peligro de ser lesionado
por el indicado vehículo."

El demandado negó en general dichas alegaciones y alegó como defensa que el niño fallecido corría huyendo de otro niño que le perseguía por aquellos contornos y en su huída vino a pasar por la acera donde se hallaba estacionado el *truck*, escurriéndose entre el peón auxiliar del chauffeur que a la sazón había subido a la plataforma y la rueda trasera derecha, perdiendo su equilibrio y cayendo en el pavimento de la calle en el sitio donde estaba dicha rueda trasera con la cual fué arrollado sin poderse evitar el accidente; alegando además que la muerte del menor se debió exclusivamente a la falta de precaución y negligencia del niño la que en nada podía ser imputable al chauffeur del demandado.

La sentencia de la corte inferior declaró sin lugar la demanda y contra ella se interpuso este recurso, señalándose por el apelante la comisión, a su juicio, de una errónea apreciación de la prueba y la falta de una aplicación de la ley y jurisprudencia pertinentes al caso. El Juez inferior no hizo una relación del caso contentiva de las conclusiones de hecho y de ley que sirvieron de base a su sentencia.

La prueba del demandante consistió en las declaraciones de tres testigos quienes están contestes en que el *truck* del demandado se encontraba parado, "pegado", según palabras de algunos testigos, a la acera derecha en la calle Cerra de Santurce, en dirección a Bayamón; que el menor caminaba por la acera y que en el momento que pasaba por el costado de la plataforma del *truck* en que el chauffeur iniciaba su marcha, desviándolo hacia afuera, la parte trasera de dicha plataforma entró en la acera, dió un golpe al niño y le derribó, cayendo entonces a la calle donde la rueda trasera ya en movimiento le arrolló causándole la muerte.

El demandado produjo tres testigos: el chauffeur y el peón auxiliar del *truck*, y Carmelo Fuentes, carpintero que dice que trabajaba el día del suceso en un taller situado frente a la acera en que estaba parado el *truck*. La parte esencial de la declaración de este último testigo textualmente dice:

"A. ¿Ud. recuerda si el 30 de octubre del año pasado ocurrió algo extraño enfrente del taller?—T. La fecha más o menos exacta no la recuerdo, pero sí recuerdo que estando trabajando ese día como a las 3 de la tarde del mismo ocurrió el hecho que estaba un *truck* parado . . . . . . A.—¿Dónde estaba parado?—T.—Frente al mismo taller que estaba yo. Hacía lo menos hora y media que estaba parado el *truck* allí, lo que esperaba no sé; lo que sí sé es que a la salida ocurrió el hecho de ser atrapado un niño cuando el *truck* empezaba a andar. Fué en la siguiente forma. Yo hacía rato que veía al niño que tuvo la desgracia de ser atrapado jugueteando con otros niños, tirándose chinas y guineos, pero a la sazón que el *truck* salía el niño venía corriendo en la misma dirección que el *truck* salía. . . . A.—¿Por delante o por detrás del *truck*?—T.—Por detrás del *truck*. Aquella acera donde estaba el *truck* parado es tan estrecha que cuando uno de los peones trató de subir al *truck* el niño en su carrera, ya estaba en esta posición, y el niño pasó por dentro de las piernas en su velocidad y tropezó con la puerta del edificio que estaba abierta y se dió y cayó y ahí mismo se paró, y como aquello es tan estrecho y el *truck* estaba tan pegado, y como en ese momento el *truck* había andado 1 metro próximamente cuando cayó al encintado de la mano derecha es que lo atrapó. . . . . ."

El peón auxiliar Colón, entre otras manifestaciones, hizo las que siguen:

"Entonces enganché el calso y montaba por el tapalodo en una tabla que tiene el carro y cuando yo montaba ví un celaje. . . . . Cuando yo montaba por detrás que ya tenía la pierna izquierda arriba y la otra iba para arriba, ví un celaje que venía y noté que era el niño que venía a caer debajo de la rueda . . . . al ver el celaje correr traté de cojerlo, pero como estaba pegado arriba a la baranda y los pies en la tabla no pude y entonces le grité a Paco: 'Paco para que has matado un niño,' y él instantáneamente paró.— A.—Antes de estar Ud. en disposición de estar montando que vió ese celaje, ¿había visto Ud. algún niño por allí?—T.—No señor, no había visto nada. . . . . Cuando ví que pasó por debajo de mí. Yo estaba trepado en la tabla . . . . Juez.—¿Ud. lo vió venir corriendo? T.—Detrás no lo ví venir corriendo. Lo ví según la posición que cayó era porque venía corriendo. . . . . A.—¿Ud. vió a ese niño o a cualquiera otro en aquellos alrededores momentos antes de ocurrir ésto?—T.—No señor . . . . . Dte. A.—¿No es verdad testigo que hacía rato que ese niño jugaba alrededor de ese *truck*?—T.—No se-

ñor, yo no lo ví. . . . A.—¿De modo que Ud. no ha visto el muchacho sino en el preciso momento en que cayó?—T.—En el preciso momento que cayó.''

Y el chauffeur Francisco Currá, en lo que creemos pertinente, dijo:

''El carro estaba parado y yo le dije al peón: 'dale manigueta' y entonces le dió manigueta y al darle manigueta metí la primera de marcha.—A.—¿Al darle manigueta el peón se montó en el *truck?*—T.—Sí señor, fué por atrás. . . . A.—¿Ud. vió momentos antes de salir o en el momento de salir o de iniciar la marcha el *truck*, Ud. vió algún niño o niños paseando, corriendo o caminando alrededor del *truck?*—T.—No señor, no había nadie.—A.—¿Se dió cuenta Ud. de si había algún niño por allí corriendo?—T.—No señor. . . . . A.—¿Oyó Ud. algún aviso o alguna señal que le diera cuenta de algún peligro ese día antes de ocurrir el accidente con el niño?—T.— Nada. No había ocurrido nada y seguí la marcha, cuando después me dijo Pedro Colón: 'Para que mataste uno'. . . . A.—¿En qué dirección paró Ud. el *truck* cuando Colón le dió el aviso?—T.—A la derecha.—A.—¿En qué forma en relación con la acera derecha, es decir, paró Ud. alineado paralelamente u oblícuamente?—T.—Yo caminaba a la calle; tenía que darle una vuelta. . . . T.—Estaba un poco retirado, como 1 pie o 2.—A.—¿1 pie o 2 de la acera?.— T.—Sí señor.—A.—¿Al salir hizo su marcha derecho para abajo?— T.—Sí señor. No tuve que darle toda la curva al guía sino un poquito. . . . A.—¿Pero Ud. no sabe con qué parte del *truck* Ud. le dió al muchacho?—T.—Fué con la rueda de atrás.''

Tales fueron las alegaciones y las pruebas en este caso. A nuestro juicio tiene razón el apelante al sostener que la corte erró al apreciar la prueba y al aplicar la ley y la jurisprudencia.

La prueba del demandante es suficiente y de la misma del demandado se desprende su culpabilidad. El niño caminaba o corría, cualquiera que sea el caso, por la acera, y la propia declaración del chauffeur Francisco Currá nos da la clave de cómo tuvo lugar el suceso. El no inició la marcha en dirección paralela a la acera. El dice que desvió hacia afuera, o sea, hacia el eje de la calle, y esto explica mecánicamente cómo la plataforma por la parte trasera invadió la

acera y produjo el accidente. El *truck* y el filo de la acera formaron un ángulo y dentro de éste tuvo que caer el menor al ser derribado por efecto del choque. En relación con esto carece de importancia la teoría del demandado de que el efecto del choque tuviera que impeler al menor hacia la pared del taller, pues esta teoría sería practicable si el *truck* al iniciar su marcha no se hubiera desviado hacia afuera. Otro detalle que puede ser influyente es que el peón auxiliar del *truck* en ningún pasaje de su declaración refiere, pues hay que presumir que tuvo ocasión de verlo si fuera cierta la declaración de Fuentes, que el niño en su carrera, como afirma este último, chocara con la puerta del taller que estaba frente al *truck* ni menos que en su rechazo el menor se pusiera de pie para luego caer debajo del *truck*.

La Corte Suprema de Iowa en un caso muy interesante y que consideramos de aplicación, dice:

"La negligencia presupone un deber de hacer, o no hacer, alguna cosa determinada. Era un deber del conductor del automóvil el gobernar y dirigir su vehículo en la parte frecuentada de la calle con tal cuidado y prudencia razonablemente suficientes para no desviarlo o permitir que se desviara en su curso de la calle a la acera en que había gente parada. Por lo tanto, cuando se demuestra que una persona que va por la parte de la calle destinada al uso de vehículos de súbito y sin aviso desvía su curso y sube a la acera en que hay gente parada, dicha persona infringe el deber que tiene para con los que están, con derecho, en la acera, y consiguientemente incurre, *prima facie,* en negligencia. Ello envuelve la doctrina de *res ipsa loquitur,* y le dice: Ud. infringió su deber para con las personas que con todo su derecho se hallaban en la acera, permitiendo que su carro súbitamente se desviara de su curso y subiera a la acera, sin aviso a los que allí se hallaban legalmente congregados. Sería una doctrina contraria a toda razón el sostener que una persona que guía un vehículo peligroso, pesado y veloz por la parte frecuentada de una calle puede permitir que su vehículo de súbito se desvíe de su curso por la calle y suba a la acera destinada al uso de viandantes. No nos parece ir muy lejos al decir que tal acto no sólo envuelve negligencia sino que tiende a demostrar un temerario e imperdonable desprecio a los derechos de las personas que se encuen-

tran en la acera, y la violación de un deber evidente, por cuanto la ley exige a todo hombre que ejercite sus propios derechos en forma tal que no ponga en peligro, irrazonable o innecesariamente, a otras personas que se hallen en el ejercicio de sus derechos.'' *Brown* v. *Des Moines Steam Bottling Works,* 156 N. W. 831.

¿Justificó el demandado su conducta?

La ley para reglamentar el uso de vehículos de motor, (No. 75) aprobada en abril 13, 1916, (p. 144) en su artículo 8, apartado letra (*e*), prescribe:

''Art. 8, letra (*e*). — Todo vehículo pesado de motor que fuere conducido en condiciones tales que la persona que lo manejase no pueda ver claramente hacia atrás, deberá estar provisto de un espejo colocado en forma tal que permita al conductor obtener dicha vista, o llevará un hombre en la parte posterior, provisto de un aparato de señales, que le permita avisar a la persona que maneja dicho vehículo de motor.''

No se desprende de la prueba que el *truck* estuviera provisto de un espejo a que se contrae la disposición anterior. Es verdad que llevaba un peón auxiliar, pero no se demostró que estuviera provisto de un aparato de señales que lo hubiera permitido avisar al chauffeur cuando se acercaba el niño en el momento de iniciar su marcha el *truck*. Si el peón auxiliar hubiera estado atento al cumplimiento de su deber, necesariamente hubiera visto al niño y evitado el accidente.

La existencia de calles estrechas y las exigencias del tráfico comercial requieren que muchas veces los *trucks* de carga penetren en las aceras, pero es precisamente por ello y por casos semejantes que el legislador dispuso que se tomaran las medida expresadas en el artículo 8 de la Ley de Automóviles. Cuando se va a poner en marcha un vehículo de motor y se sabe que va a invadirse la acera, es el deber del chauffeur y del peón auxiliar cerciorarse de que la acera esté libre. No es este el caso de un niño que súbitamente sale de una casa y se lanza sin poderse evitar sobre el au-

tomóvil.  Todos los testigos, así los del demandante como los del demandado, colocan al niño en la acera.

Con respecto a lo que constituye negligencia contributoria por parte de un niño de la edad del que murió a causa del accidente, que sólo contaba nueve años de edad, véanse los casos de *Rivera* v. *Sucesores de López Villamil,* 29 D. P.R. 275, y *Flores* v. *Sucrs. de Pérez Hermanos,* 29 D.P.R. 1046, pareciendo conveniente citar la siguiente doctrina establecida en el último:

"Cuando un agente peligroso como un vehículo de motor retrocede o va a retroceder, el conductor debe primero dar aviso y asegurarse de que puede hacerlo sin causar daño a las personas o a la propiedad. La ley prescribe que los *trucks* lleven un observador o que estarán provistos de un espejo que permita al conductor mirar hacia atrás, pero aunque en este caso los apelantes no cumplieron con la ley, el mero cumplimiento no les eximiría de responsabilidad."

Por virtud de todo lo expuesto, opinamos que *debe revocarse la sentencia apelada* dictándose otra condenando al demandado a pagar al demandante la suma de *mil quinientos dólares, sin costas.*

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.