URSULA HERNÁNDEZ como madre natural del menor RAMÓN HERNÁNDEZ, demandante y apelada, *v.* SERODACIO ALVARADO, demandado y apelante.

No. 4596.—*Sometido:* Junio 28, 1929. *Resuelto:* Mayo 31, 1930.

*Celestino Iriarte,* abogado del apelante; *L. H. Tirado,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El demandado apela de una sentencia en una acción de daños y perjuicios provenientes de un accidente de automóvil, y alega que la corte de distrito erró:

"Primero, al aplicar la doctrina de *res ipsa loquitur,* y,

"Segundo, al no declarar que la prueba fué suficiente para destruir la presunción de negligencia y para establecer la negligencia contribuyente."

El día del accidente, el demandado, dueño de una guagua, la conducía lentamente en dirección este por la Calle Rafael Cordero hasta su intersección con la Norzagaray. El vehículo estaba cubierto de cartelones anunciando una película cinematográfica. También conducía una banda de música y un individuo que distribuía programas. Iba acompañado del acostumbrado contingente de rapaces y curiosos, y atraía una multitud doquier se detenía. Hizo alto en la esquina de las Calles Rafael Cordero y Norzagaray y luego trató de doblar en dirección norte por la última.

Tanto la Calle Norzagaray como la Rafael Cordero son estrechas. No fueron construídas para el tráfico de automó-

viles. La Calle Rafael Cordero es sólo poco más del doble del ancho de un automóvil. En el momento del accidente la esquina de la acera norte estaba ocupada por el andamio de un edificio en vías de construcción. Al lado sur la acera tiene poco menos de un metro de ancho. Al lado oeste de la Calle Norzagaray la acera es algo más ancha.

Las dos esquinas no son rectangulares. La esquina sur forma un ángulo obtuso. Al norte, el ángulo es agudo. Es mucho más fácil doblar por la calle Rafael Cordero a la Norzagaray hacia el sur que hacia el norte. A fin de doblar hacia el norte, el conductor del vehículo se vió precisado a caminar primero hacia adelante y después hacia atrás, y a repetir esta maniobra un número de veces. Cada vez que daba marcha hacia atrás, la parte trasera del vehículo se montaba en la acera sur de la Calle Rafael Cordero. La tercera o cuarta vez, Ramón Hernández, un niño de ocho años que estaba en la acera, fué aplastado contra la pared por una esquina del ómnibus y muerto.

Existe algún conflicto en la prueba respecto a si el niño estaba parado en la acera, o si caminaba por ella, o si trataba de cruzar por detrás del vehículo entre éste y la pared. Nada hay que demuestre que él saliera repentinamente de un sitio de seguridad hacia uno de peligro, o que de algún otro modo actuara en una forma que razonablemente no hubiera podido preverse. Lo que hizo, lo fué en la inmediata presencia de un empleado que dirigía el movimiento del ómnibus y de quien dependía el conductor para ello. La inferencia es que la prudencia ordinaria de parte del empleado hubiese evitado el accidente.

Este empleado dió un aviso general y la multitud se dispersó al comenzar la maniobra. Su propia declaración es al efecto de que la acera estaba despejada cuando ordenó que se diera contramarcha poco antes de ocurrir el accidente. Dice que no vió a la víctima en la acera hasta después que el conductor, al informarse del accidente por los gritos del gentío, dió marcha hacia adelante, y al quedar el muchacho

libre de la presión del vehículo, su cuerpo cayó sobre el pavimento.

El empleado estaba parado en un estribo que había en la parte posterior del vehículo. El niño fué muerto dentro de una distancia de una vara del estribo.

La declaración del empleado de que la acera estaba despejada cuando ordenó que se diera contramarcha, implica, bien que podía ver en ambas direcciones sin obstrucción, o que la acera estaba despejada sólo en parte. No hay contención alguna de que la vista del empleado estuviese obstruída. Su aseveración de que la acera estaba despejada es la única prueba que tiende a demostrar que él estaba a la expectativa tanto antes como después de ordenar que se marchara hacia atrás. Si su vista estaba franca en ambas direcciones y no miró hacia ambos lados antes y después de dar la orden, fué culpable de negligencia. Si había algo que le impidiera ver en ambas direcciones, estaba en el deber de abandonar el estribo y colocarse en un sitio donde pudiera ver en tal forma. En la hipótesis de que su vista no estuviera obstruída y de que estuviese mirando en ambas direcciones después de ordenar que se diera contramarcha, él habría visto al niño en la acera. Si, como dice, no vió al niño hasta después del accidente sin estar obstruída su vista, ello se debió a que dejó de ejercer el debido cuidado permaneciendo a la expectativa.

El juez de distrito no cometió error al aplicar la regla relativa a la. negligencia contribuyente cuando se trata de menores, enunciada en el caso de *Rivera* v. *Sucesores de L. Villamil*, 29 D.P.R. 275. No es necesario que especulemos respecto a lo que constituiría negligencia contribuyente en caso de que se tratara de un adulto en parecidas circunstancias.

El apelante asume, sin tratar de demostrarlo, que los vehículos de motor y los peatones tiene iguales derechos a las aceras. No podemos estar conforme con ese criterio. Por lo menos teóricamente, con sujeción a posibles limitaciones y

excepciones, la acera debe considerarse como una zona de seguridad destinada al uso exclusivo de viandantes. Cuando el conductor de un vehículo de motor invade tal zona, debe ejercer un grado de cautela en armonía con las circunstancias y con el tamaño, peso y características generales del vehículo.

Refiriéndose a los deberes de un peatón mientras cruza una parte traficada de una calle, en que los derechos de los viandantes y de los vehículos de motor son iguales, la Corte Suprema del estado de Massachusetts, en el caso de *Hennessey* v. *Taylor*, 76 N. E. 224, 225, dijo:

"La regla corriente sobre prudencia ordinaria no impone sobre ellos el deber de estar constantemente alertas para ver si su sendero está exento de peligro, o de permanecer en un estado de ánimo que les haga temer que otros caminantes pueden infligirles algún daño. El viandante no sólo tiene derecho a presumir que el camino está razonablemente expedito para su uso, sino también que aquellas personas que legalmente lo usan en unión a él ejercerán el debido cuidado."

Sin hacer distinción alguna entre los derechos y deberes recíprocos en los cruces de calles y en los extremos de las aceras, la misma corte, en el caso de *Murray* v. *Liebmann*, 120 N. E. 79, 80, dijo:

"La acera en que estaba parado el demandante conversando con un amigo al ser derribado y lesionado por la goma de repuesto que llevaba el automóvil del demandado en posición vertical en el estribo, formaba parte de la calle, en el uso concurrente de la cual cada parte tenía para con la otra el deber de ejercer el cuidado de rigor. Y el demandante tenía derecho a asumir que los conductores de vehículos que usaran la parte de la vía destinada a ellos, ejercerían el debido cuidado para evitar tener contacto con las personas que estuviesen paradas al borde de la acera."

En 42 C. J. 935, el texto, después de comentar el deber que el conductor de un vehículo de motor tiene de mirar hacia atrás, continúa expresándose así:

"Empero, no basta que el conductor mire en una sola dirección. La ordinaria prudencia y el respeto a la seguridad de las personas

que utilizan la vía pública le exigen que mire en todas direcciones en que pueda esperarse que salga un caminante, no sólo antes de empezar a dar contramarcha, sino también mientras camina hacia atrás. . .''

''Dar contramarcha en una esquina sin previo aviso de alarma constituye negligencia, a consecuencia de la cual se es responsable de los daños y perjuicios irrogados a un viandante.''

En una nota que aparece al calce se cita el caso de *Askin v. Moulton* (Md.), 131 Atl. 82, 84, en apoyo de lo siguiente:

''Poner en contramarcha a un automóvil, sin dar aviso, sobre el espacio que ha sido reservado para el uso de las personas que cruzan la calle, constituye, por sí solo, negligencia.''

No vacilamos en decir que estas reglas son aplicables *a fortiori* a retrocesos de un ómnibus por una acera.

En una nota que consta al pie del caso de *Klein v. Beeten,* 5 A.L.R. 1237, 1240, se dice que:

''La línea divisoria de la doctrina de *res ipsa loquitur* corre a lo largo de un punto que está situado entre aquellos casos en que se demuestra la mera ocurrencia de un accidente y aquellos en que hay además prueba específica—circunstancial o de cualquiera otra clase —de negligencia. A causa de la vaguedad de esta línea, es difícil en muchas ocasiones decir si el caso es uno en que se tuvo la intención de dársele efecto a la doctrina.''

Según observa el autor de una nota que aparece al pie del caso de *Memphis Street R. Co. v. Stockton,* 22 A.L.R. 1467, 1471:

''. . . Es obvio que la prueba, directa o circunstancial, en adición a aquella que revela la causa física del accidente, puede repeler tan concluyentemente cualquier inferencia de negligencia que de otro modo pudiera surgir, que impida la aplicación de la regla, o que, por lo menos, prive al demandante de cualquier beneficio práctico derivado de la misma.''

En lo concerniente al efecto directo de la prueba de negligencia, véase 45 C. J. 1206, sección 774, y casos allí citados.

En cuanto a la necesidad, efecto y suficiencia de la explicación del demandado, véase 45 C. J. 1222, sección 784.

No trataremos en este momento de hacer una disertación sobre las posibles distinciones existentes entre el significado de la frase *res ipsa loquitur* en su llamado sentido estricto y distinctivo y el significado de la misma en su aspecto más amplio como "una forma más breve de decir que las circunstancias que rodean un accidente son por sí mismas de tal naturaleza que justifican a un jurado a inferir que medió negligencia en el accidente." *Sand Springs Park* v. *Shrader*, 22 A.L.R. 593, 597. Véase también 45 C. J. 1194, sección 768; Id., página 1198, sección 770.

En el caso de *Maslenka* v. *Brady,* 188 App. Div. 661, 662, se señala el curso general de la manera de pensar sobre el extremo por lo menos en una jurisdicción.

*Ivins* v. *Jacobs,* 245 Fed. 892, confirmado en 250 Fed. 431, es otro caso interesante.

En *Brown* v. *Des Moines Steam Bottling Works,* 156 N. W. 829, 1 A.L.R. 835, la Corte Suprema de Iowa reseña la prueba en pro y en contra y señala las varias conclusiones a que el jurado pudo haber llegado con vista de la evidencia. Luego, después de exponer algunos de los hechos no controvertidos, la corte dice que de esos hechos, no apareciendo nada más, el jurado pudo haber llegado a la conclusión de que el conductor del vehículo del demandado fué negligente en el manejo del mismo y que el demandado había violado un deber para con el público en general. Por tanto, concluye la corte, prueba de ciertos hechos específicos "equivaldría a prueba de tal negligencia *prima facie* que por sí sola y aisladamente daría derecho a una persona que sufriera lesiones a obtener sentencia a su favor por haber mediado negligencia." Entonces, después de definir los deberes del conductor de un vehículo, la corte dice que cuando tal conductor hace ciertas cosas "viola los deberes que tiene para con aquellos que se hallan en el uso legal de la acera, incurriendo así, *prima facie,* en negligencia." "Esto," continúa diciendo la corte, "envuelve la doctrina de *res ipsa loquitur*," y dice: "Usted violó el deber que tenía para con aquellos que legalmente

estaban en la acera, permitiendo que el vehículo manejado por usted se desviara repentinamente de su curso y se subiera a la acera sin dar aviso a aquellos que tenían derecho a estar allí congregados.'' A esto sigue la discusión de la explicación dada por el demandado respecto a las causas anteriores al accidente, las que el jurado había hallado, y la corte había resuelto, eran poco satisfactorias e insuficientes para destruir el caso *prima facie* establecido por el demandante.

Es obvio que la corte de Iowa utiliza la máxima latina meramente como una forma concisa y sonora de parafrasear o imprimir énfasis al pensamiento expresado ya varias veces, de que los hechos no controvertidos de que se hace mención, en ausencia de cualquier explicación, equivalen a prueba *prima facie* de negligencia penable.

Un extracto de la opinión en el caso de *Brown* v. *Des Moines Steam Bottling Works* fué usado en forma muy similar por esta corte en el de *Rivera* v. *Currá,* 33 D.P.R. 964. La médula de lo que allí se decidió está claramente expuesta en el sumario, así:

"El chauffeur de un truck que al ponerlo en movimiento lo hace de tal suerte que la parte posterior de la plataforma invade la acera y causa la muerte de una persona que caminaba por ésta, es culpable *prima facie* de negligencia. Era deber del chauffeur y de su auxiliar cerciorarse de que la acera estaba libre."

En el presente caso, después de expresar los hechos establecidos durante el juicio, el juez de distrito dijo:

"De acuerdo con lo que la corte considera probado, éste es un caso de negligencia crasa, y la prueba establece fuertemente la presunc'ón de negligencia *prima facie* por parte del conductor del vehículo. Todos los testigos colocan al niño en la acera; todos declaran que la calle y la acera son estrechas en el sitio de la calle Rafael Cordero, donde ocurrió el accidente, y así también lo revelan las fotografías; todos de modo uniforme vieron que la parte posterior del vehículo invadió la acera al ocurrir el accidente, y antes, en las maniobras que lo precedieron. El conductor sabía esto. Era deber, tanto del conductor como del cobrador, extremar las precauciones para evitar un daño. Los niños también tienen derecho a uti-

lizar las aceras para transitar por ellas. Es el paso, el camino único, por donde puede andarse, en la creencia de que se está seguro, relativamente, de no sufrir un accidente. Y cuando un vehículo pesado, como una guagua va a dar marcha para atrás, tanto el conductor como el cobrador no pueden ni deben hacerlo sin cerciorarse de que la acera está libre, de que no ha de ocasionarse un accidente.

"Nos parece de absoluta aplicación a este caso la cita que hace el Tribunal Supremo en su opinión del caso de *Rivera* v. *Currá,* 33 D.P.R. 964."

Entonces el juez de distrito copia el extracto del caso de *Brown* v. *Des Moines Steam Bottling Works,* tal como aparece en *Rivera* v. *Currá.* Luego cita de Huddy, 5ª. edición, página 346, sección 283, y dice que el texto parece aplicable a los hechos del caso de autos, en vista de la regla enunciada por este tribunal en *Rivera* v. *Currá,* según está expresada en el sumario de ese caso, *supra.*

Entonces discute el deber del demandado, y en apoyo del criterio expresado cita del sumario de *Flores* v. *Sucrs. de Pérez Hermanos,* 29 D.P.R. 1046, lo que sigue:

"Cuando un agente peligroso como un vehículo de motor retrocede o va a retroceder, el conductor debe primero dar aviso y asegurarse de que puede hacerlo sin causar daño a las personas o a la propiedad."

También cita de la opinión en ese caso lo siguiente:

"Dudamos, además, cuando se trata de niños, si sería suficiente un mero aviso, pero la regla es que antes de que una máquina se ponga en movimiento el conductor debe tener bastante motivo para creer que no hay ninguna persona o propiedad en su camino."

A esto sigue una exposición de los motivos que ha tenido la corte para llegar a la conclusión de que el demandado y su agente o empleado fueron culpables de negligencia, y que tal negligencia fué la causa del accidente.

De suerte que aparece que el juez de distrito no fué inducido a error en forma alguna por el caso de *Rivera* v. *Currá,* sino que resolvió que la doctrina de *res ipsa loquitur* era palicable sólo en el sentido en que se usó esa frase en el caso de Currá.

En *Scott* v. *London & St. Katherine Docks Co.*, 3 H. & C. 596, 601, 159 Reprint 665, la corte, por voz del Juez Presidente Sr. Erle, dijo:

"Debe haber prueba razonable de negligencia.

"Pero cuando se demuestra que la cosa está bajo el dominio del demandado o sus mandatarios y el accidente es tal que en el curso ordinario de las cosas no ocurriría si aquellos que tienen su dominio ejercen el debido cuidado, éso ofrece prueba razonable, en ausencia de una explicación de parte del demandado, de que el accidente surgió por falta de cuidado."

Esta exposición de la regla ha sido extensamente citada con aprobación y adoptada en decisiones posteriores. Se ha descrito como la exposición más adecuada y concisa del principio. Ha llegado a ser un clásico legal. Los tribunales han dicho que la regla nunca ha sido expuesta más acertadamente y que no puede ser mejorada en sus términos generales. 45 C. J. 1193, sección 768, nota 52, y casos allí citados.

En el presente caso se demostró que el ómnibus estaba bajo el dominio y dirección exclusivos del demandado y su empleado. El accidente fué uno que en el curso ordinario de las cosas no hubiese ocurrido si el demandado y su mandatario hubieran ejercido el debido cuidado. La prueba de la demandante no se limitó "a la mera ocurrencia de un accidente" ni al "mero hecho del daño." No hubo cuestión alguna relativa a la pérdida del dominio del vehículo. Hubo poca o ninguna prueba tendente a demostrar negligencia contribuyente o un accidente inevitable. La demandante no presentó prueba sobre ningún acto específico u omisión de índole tal que excluiría la aplicación de la doctrina de *res ipsa loquitur*. El demandado no ofreció explicación satisfactoria alguna.

El hecho no controvertido traído a colación por la prueba del demandado de que el cobrador que estaba estacionado en el estribo trasero no vió a la víctima hasta después de haber sido golpeada por el ómnibus difícilmente puede considerarse como que surte efecto para privar a la demandante del bene-

ficio de la regla. 45 C. J. 1222, sección 784, y casos allí citados. Tiende sí hacia una omisión específica como la causa posible o probable del accidente, y, hasta ese límite, fortalece decididamente el caso *prima facie* ya establecido por la demandante.

Así, el demandado (si se nos permite hacer uso de una expresión que consta en el caso de *Ivins* v. *Jacobs, supra*) tapó un hoyo cavando otro.

No necesitamos detenernos a entrar en sutilezas respecto a cuestiones de terminología jurídica. El resultado es el mismo, ya nos basemos en el principio de *res ipsa loquitur,* o en reglas generales de evidencia circunstancial. En la hipótesis de *res ipsa loquitur,* nada hubo que destruyera la presunción de negligencia. Aparte de cualquier cuestión de *res ipsa loquitur* en su sentido técnico, el juez de distrito no tuvo duda alguna sobre la negligencia torticera del demandado. Y nosotros tampoco tenemos ninguna. El error, de haberse cometido, al citar del caso de *Rivera* v. *Currá,* o al referirse a la doctrina de *res ipsa loquitur* como aplicable al presente caso, no es uno que dé lugar a la revocación.

Otras contenciones son que la suma de $5,000 concedida a la demandante es excesiva, que la corte estuvo influída por pasión, prejuicio y parcialidad, y que cometió error al conceder a la demandante las costas y desembolsos.

La cuantía de la sentencia difícilmente puede considerarse tan claramente excesiva que justifique su reducción. No hallamos prueba de pasión, prejuicio o parcialidad, ni abuso de discreción al conceder las costas y desembolsos a la demandante.

*Debe confirmarse la sentencia recurrida.*