### JACOB et al. v. IVINS.

#### (Circuit Court of Appeals, Third Circuit. April 29, 1918.)

#### No. 2327.

1. MUNICIPAL CORPORATIONS ⊚⇒706(6)—STREETS—INJURY TO PERSONS ON—EVIDENCE.

Evidence that a motorcar swerved from the street and ran upon the sidewalk, where it struck a pedestrian after pushing a stone carriage block some distance from its place, warrants the submission to the jury of the question of negligence on the part of the driver.

2. APPEAL AND ERROR ⊚⇒1068(3)—REVIEW—HARMLESS ERROR.

In an action against the owner of a delivery automobile by plaintiff, who was struck by the same while on the sidewalk, the car having swerved from the street, an instruction presenting the doctrine of res ipsa loquitur, while improper, plaintiff having called the driver of the car, who testified as to defects in the steering apparatus causing the accident, was harmless as to defendant, where the evidence justified verdict in favor of plaintiff.

3. MUNICIPAL CORPORATIONS ⊚⇒706(5)—INJURIES TO PERSONS ON STREETS—EVIDENCE.

In an action by a pedestrian, injured on the sidewalk when defendant's motorcar left the street, evidence *held* to warrant a verdict against defendants.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by Mary J. Ivins against Joseph P. Jacob and another, trading as Jacob Bros. There was a judgment for plaintiff, defendants' motion for new trial was denied (245 Fed. 892), and defendants bring error. Affirmed.

William W. Smithers, of Philadelphia, Pa., for plaintiffs in error.

Daniel R. Rothermel, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiff, Mary J. Ivins, while walking on the sidewalk of a Philadelphia street, was struck and in-

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jured by a delivery automobile that was driven by Joseph P. Jacob, one of the defendants, and the question for decision was whether the injury was caused by his negligence. (D. C.) 245 Fed. 892.

[1] The important facts were not in controversy: The plaintiff was walking south on the west sidewalk of Eighteenth street, and was approaching the corner of Berks street, when she was knocked down and severely hurt. The machine had just crossed Berks street, and was running north on Eighteenth, when it swerved to the west, mounted the curb, pushed a stone carriage block some distance from its place, struck the plaintiff, and overturned. These facts were proved by the plaintiff herself and by one or two other witnesses, and in themselves were sufficient to carry the case to the jury. We do not decide that they justified the application of the doctrine, "res ipsa loquitur." It is fairly common knowledge that an automobile sometimes gets out of control without the driver's fault; but, without more, the jury would have been at liberty to draw the inference of negligence. But, instead of resting her case at this point, the plaintiff strengthened it by the testimony of another witness, the driver of the car. He was called for cross-examination under the Pennsylvania act of 1887 (Act May 23, 1887 [P. L. p. 158]); but he was allowed to testify fully, and before he finished he had given the whole defense, which in brief was this:

[2, 3] The automobile, a new Ford car, was on its first business trip, and had only been in operation about one hour. It had made several deliveries; the last stop being a short distance south of Berks street. Up to this time the car had been driven by Raymond Perlstein, one of the defendants' employés; but Joseph P. Jacob now took the wheel. He had had two years' experience with cars, and knew how to drive this particular make. He testified further:

"I went out to see whether he [Perlstein] knew how to drive a car. * * * The intention of the firm was to let him drive it, if he proved capable of handling it. * * * The street was perfectly clear. We started from, I think, 1840 North Eighteenth street, going over to the right-hand side of the street. The machine had just gone into high, and when you first go into high it is going at approximately 15 miles an hour; then you check it immediately—get it under control. As we passed over Berks street, a delivery automobile of some kind was standing on the right-hand side, not exactly at Berks street, but a little farther along, and I turned to the left, when I came near it, to avoid it. To my surprise the wheel stuck fast, and when I released or dropped the engine into neutral, and applying the foot brake was not going to stop the car in time, I said: 'Raymond, look out for yourself. The car is going up on the pavement. Don't get hurt.' * * * Then the car struck the pavement, the two front wheels going up on the sidewalk, and the steering bar in front struck the dismounting stone, and pushed it, I suppose, about six inches, and the car quietly turned over, pinning Miss Ivins under it. I was all intent in trying to force the steering gear; but I did not know the young lady was under the car until I heard her voice, and then I directed my mind to lifting up the car, to take her out. * * * The rod underneath has a little ball and socket joint on the end, and that passed center and stuck fast. That is a thing that is known. * * * The street was damp; neither wet nor dry. * * * Our last stop was 1840. That is near the corner. I then had gone from low into high, checked my engine, as we passed over Berks, I would say 15 miles an hour, just about the speed that you start with, and then, before the car struck the curb, it was reduced by placing the engine in neutral and applying the brakes, such as it was. I

would suppose it was reduced to possibly 5 or 6 miles an hour at the time it struck that stone. The machine was working very stiff at the time, and heated the water in the tank, which would indicate that it would be impossible to go at a high rate of speed, with a perfectly new engine, and everything working tight. * * * The machine was mechanically constructed wrong. We have had to change the steering apparatus twice before we got a steering apparatus that was safe. * * * The whole machine was so wrong that subsequently the Ford people * * * took it apart and replaced the parts that had been admitted to be imperfect, and performed the whole thing without charge. * * * I noticed that the whole thing was working very stiffly. We were told that it would work stiffly; but it had been oiled up and was in perfect order, and when we find there is something wrong with a car, we gradually get to the point. * * * I felt uncomfortable the way he [Perlstein] was driving, and I could not determine whether it was the man or the machine. So when he got out to deliver a package I got at the wheel, and from the time that I started the car until the accident occurred I felt that there was something wrong with the car, and my intention was to stop before coming to the next street, and make an examination, and see what it was. My knowledge of the machine indicated to me that there was something wrong. * * * "

The rate of speed was in some dispute, but this was a matter for the jury.

The defense having thus been presented, no other witness was called, and it will be observed that the occurrence had been fully laid before the jury—the injury, its cause, the surrounding circumstances, and the defendants' explanation. In such a situation there was no occasion to apply the presumption expressed by "res ipsa loquitur," and the remarks in the charge on that subject might well have been modified, or perhaps omitted. The whole case being before the jury on direct evidence, the question was whether the defendants' negligence had thus been established. The plaintiff was not relying on presumption, but on positive testimony, and the defendants' explanation had the same quality of support. Nevertheless, we are satisfied that as a whole the charge could not have led the jury astray, and therefore we are not disposed to be critical about a few sentences that might not stand the test of a leisurely examination. It is clear enough that the verdict is justified by the evidence; the driver's lack of due care might properly be inferred from the fact that, when he took the wheel, he knew that the car was not working satisfactorily, but took the risk of going on without examination or effort to remedy what might be wrong, and, moreover, of running it on a narrow city street at a rate of speed which some of the witnesses described as very fast.

The assignments of error do not need separate discussion. We find no reversible error, and affirm the judgment.