ÚRSULA HERNÁNDEZ, ETC., Plaintiff and Appellee, *v.* SERODACIO ALVARADO, Defendant and Appellant.

No. 4596. Argued June 28, 1929.—Decided May 31, 1930.

*Celestino Iriarte* for appellant. *L. H. Tirado* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Defendant appeals from a judgment in an action for damages arising out of an automobile accident, and says that the district court erred:

First, in applying the doctrine of *res ipsa loquitur,* and,

Second, in not finding that the evidence was sufficient to overcome the presumption of negligence, and to establish the fact of contributory negligence.

On the day of the accident, defendant, the owner of a motor bus, drove it slowly east along Rafael Cordero street to its intersection with Norzagaray. The car was covered with posters advertising a moving picture show. It carried a band, and a man distributing hand bills. It was accompanied by the usual contingent of street urchins and hangers-on, and drew a crowd wherever it stopped. It stopped at the corner of Rafael Cordero and Norzagaray, and, later, attempted to make the turn north into Norzagaray street.

Both Norzagaray and Rafael Cordero streets are narrow. They were not built with a view to automobile traffic. Rafael Cordero street is but little more than double the width of a car. At the time of the accident, the sidewalk on the north, at the corner was occupied by the scaffolding of a building in the course of construction. On the south side, the sidewalk is something less than a meter in width. On the west side of Norzagaray, the sidewalk is somewhat wider.

The two corners are not rectangular. The corner on the south side forms an obtuse angle. On the north the angle is acute. It is much easier to make the turn from Rafael Cordero into Norzagaray toward the south than toward the north. In order to make this turn to the north, the driver was obliged to go first forward and then backward, and to repeat this maneuver a number of times. Each time that he backed, the rear of the vehicle passed over the sidewalk on the south side of Rafael Cordero street. The third or fourth time, Ramón Hernández, a child of eight years, while on the sidewalk, was crushed against the wall by a corner of the bus, and killed.

There is some conflict in the testimony as to whether the child was standing on the sidewalk, or was moving about on the sidewalk, or was attempting to cross behind the bus, between it and the wall. There is nothing to show that he suddenly darted from a place of safety into a position of peril, or otherwise acted in a way that could not have been reasonably anticipated. Whatever he did was done in the immediate presence of an employee who was directing the movement of the bus, and upon whom the driver depended for that purpose. The inference is that ordinary prudence on the part of this employee would have avoided the accident.

This employee gave a general warning and the crowd dispersed when the maneuvering began. His own testimony is that the sidewalk was clear when he gave the order to back just before the accident. He says that he did not see the

victim on the sidewalk until after the driver, informed of the accident by the cries of the crowd, started forward and released the body which fell to the ground.

This employee was standing on the step at the rear of the bus. The child was killed within an arm's length from the step.

The statement of the employee that the sidewalk was clear when he gave the order to back implies either that he had an unobstructed view in both directions or that the sidewalk was clear only in part. There is no contention that the view of the employee was obstructed. His statement that the sidewalk was clear is the only evidence tending to show that he kept a lookout either before of after giving the order to back. If he had a clear view in both directions and did not look in both directions before and after giving the order, he was guilty of negligence. If he did not have a clear view in both directions it was his duty to leave the step and place himself in a position where he could obtain such a view. Upon the hypothesis that his view was unobstructed and that he kept a lookout in both directions after giving the order to back he would have seen the child on the sidewalk. If, as he says, he did not see the child until after the accident, his view being unobstructed, it was because he failed to exercise due care in keeping a lookout.

The district judge did not err in applying the rule as to contributory negligence in the case of children, announced in *Rivera* v. *Sucrs. of López Villamil & Co.*, 29 P.R.R. 257. We need not speculate as to what would constitute contributory negligence in the case of an adult in like circumstances.

Appellant assumes, without attempting to show, that motor vehicles and pedestrians have equal rights on the sidewalk. We cannot concur in this view. Theoretically, at least, subject to possible limitations and exceptions, the sidewalk should be regarded as a safety zone, set apart for the exclusive use of pedestrians. When the driver of a motor

vehicle invades such a zone, he must exercise a degree of care commensurate with the surrounding circumstances and with the size, weight and general characteristics of the vehicle.

Referring to the duty of a pedestrian while crossing the traveled portion of a street, where the rights of pedestrians and motor vehicles are equal, the Supreme Judicial Court of Massachusetts, in *Hennessey* v. *Taylor*, 76 N. E. 224, 225, said:

"The usual rule of ordinary care does not impose upon them the burden of being constantly on the lookout to see if their path is free from dangerous defects, or in a state of apprehension of personal injury from other travelers. The traveler not only has a right to presume that the way is reasonably fitted for his use, but also that those who may be lawfully using it with himself will exercise a proper degree of care."

Without drawing any distinction between reciprocal rights and duties on street crossings and at the curb, the same court in *Murray* v. *Liebmann*, 120 N. E. 79, 80, said:

"The sidewalk where the plaintiff was standing engaged in conversation with a friend when he was struck and injured by the slightly overhanging spare tires carried on the defendant's automobile in an upright position upon the running board, formed part of the highway, in the concurrent use of which each party owed to the other the duty of due care. And he had the right to assume that drivers of vehicles using the part of the way wrought for carriage travel would exercise ordinary precaution to avoid contact with persons on the sidewalk standing within the curbing."

In 42 C. J. 935, the text, after commenting on the duty of the operator of a motor vehicle to keep a lookout to the rear, continues as follows:

"It is not, however, enough for the operator to look in one direction. Common prudence and regard for the safety of others using the highway require him to look in all directions from which a traveler may be expected to approach, not only before he begins to back, but also while he is in the act of backing . . .

"Backing over a street crossing without warning is negligence resulting in liability for injury to a pedestrian caused thereby."

*Askin* v. *Moulton*, (Md.) 131 Atl. 82, 84, is cited in a footnote as authority for the statement that—

"The backing of the automobile, without warning, over the space reserved for the use of pedestrians crossing the street, was in itself an act of negligence."

We do not hesitate to say that these rules apply *a fortiori* to the backing of an omnibus across the sidewalk.

In a note to *Klein* v. *Beeten*, 5 A.L.R. 1237, 1240, it is said that—

"At some point between those cases in which the mere happening of an accident is shown, and those in which, in addition, there is specific evidence, circumstantial or otherwise, of negligence, the border line of the doctrine of *res ipsa loquitur* runs. Because of the haziness of this line it is difficult, in many instances, to say whether or not the case was one in which the doctrine was considered or intended to be given effect."

As observed by the author of a note to *Memphis Street R. Co.* v. *Stockton*, 22 A.L.R. 1467, 1471:

". . . it is obvious that the evidence, direct or circumstantial, in addition to that which discloses the physical cause of the accident, may so conclusively repel any inference of negligence that might otherwise arise as to prevent the application of the rule, or, at least, deprive plaintiff of any practical advantage therefrom."

As to the effect of direct evidence of negligence, see 45 C. J., page 1206, section 774, and cases cited.

As to necessity, effect, and sufficiency of defendant's explanation, see 45 C. J., page 1222, section 784.

We shall not attempt at this time a disquisition upon possible distinctions between the meaning of the phrase *res ipsa loquitur* in what has been termed its strict and distinctive sense and the meaning thereof in its broader aspect, as "a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as to the cause of the accident." *Sand*

*Springs Park* v. *Shrader,* 22 A.L.R. 593, 597. See also 45 C. J., page 1194, section 768; id. page 1198, section 770.

*Maslenka* v. *Brady,* 188 App. Div. 661, 662 indicates the general trend of thought in at least one jurisdiction.

*Ivins* v. *Jacobs,* 245 Fed. 892, affirmed in 250 Fed. 431, is another interesting case.

In *Brown* v. *Des Moines Steam Bottling Works,* 156 N. W. 829, 1 A.L.R. 835, the Supreme Court of Iowa outlines the evidence pro and con and points out the various conclusions that might have been reached by the jury upon that evidence. Next after setting forth a few undisputed facts the court says that from these facts, nothing further appearing, the jury could have found that the driver of defendant's car was negligent in his management thereof and that defendant had violated a duty which it owed to the general public. Therefore, the court concludes, proofs of certain specified facts "would be proof of such negligence *prima facie,* as would, in and of itself, entitle the one injured by the act to recover as for negligence." Then after defining the duty of the driver the court says that when the driver does certain things "he violates that duty which he owes to those rightfully on the sidewalk, and thus, *prima facie,* becomes involved in negligence." "This," the court goes on to say, "involves the doctrine of *res ipsa loquitur,*" and says: "You violated your duty to those rightfully standing upon the sidewalk, by allowing your car to be diverted suddenly from its course and to come upon the sidewalk, without warning to those rightfully congregated there." This is followed by a discussion of defendant's explanation as to the antecedent cause of the accident, which had been found by the jury and is held by the court to be unsatisfactory and insufficient to overcome the prima facie case established by plaintiff.

Obviously the Iowa court uses the latin maxim merely as a short and sonorous way of paraphrasing or emphasizing the thought already several times expressed that the undis-

puted facts referred to, in the absence of any explanation, amount to a prima facie showing of actionable negligence.

An extract from the opinion in *Brown v. Des Moines Steam Bottling Works* was used in much the same way by this court in *Rivera v. Currá*, 33 P.R.R. 925. The gist of what was there decided is clearly stated in the syllabus as follows:

"A chauffeur who in starting his truck allows the back part of its platform to extend over the sidewalk and strike and kill a person walking on the sidewalk is prima facie guilty of negligence. It was the duty of the chauffeur and his assistant to ascertain that the sidewalk was clear."

In the instant case after stating the facts established at the trial the district judge said:

"The court finds that this is a case of gross negligence and that the evidence strongly establishes a presumption of prima facie negligence on the part of the driver of the vehicle. All witnesses located the child on the sidewalk; they all testified that the sidewalk and Rafael Cordero street, where the accident took, place, are narrow, which fact is also revealed by the photographs; all witnesses in a uniform manner saw that the rear part of the vehicle invaded the sidewalk when the accident occurred, as well as before, in the preceding maneuvers. The driver knew this. It was the duty of both the driver and his assistant to exercise the utmost care to prevent an accident. Children are also entitled to the use of sidewalks. It is the sole path over which one may travel in the belief that he is relatively safe and that he will suffer no damage. When a heavy vehicle like a bus moves backward the driver and his assistant can not and should not back without being assured that the sidewalk is clear and that no accident will happen.

"It seems to us that the citation made by the Supreme Court in the opinion rendered in Rivera v. Currá, 33 P.R.R. 925, is strictly in point."

The district judge then quotes the extract from *Brown v. Des Moines Steam Bottling Works,* as found in *Rivera v. Currá, supra.*

Next he quotes from Huddy on Automobiles, 5th edition, page 346, section 283, and says that the text seems applicable to the facts in the case at bar in view of the rule announced by this court in *Rivera* v. *Currá,* as stated in the headnote to that case, *supra.*

He then discusses the duty of defendant, and, in support of the view expressed, quotes from the syllabus in *Flores* v. *Successor of Pérez Brothers,* 29 P.R.R. 977, as follows:

"When a dangerous instrumentality like an automobile backs, or is about to back, the driver should first give notice and ascertain that he can do so without injury to persons or property."

He also quotes from the opinion in that case this statement:

We doubt, moreover, where children are concerned, whether a mere warning would be enough; but the rule is that before a machine is set in motion the driver must have sufficient reason to believe that there is no person or property in his way."

This is followed by a statement of the reason for the conclusion reached by the court below that defendant and his agent or employee were guilty of negligence, and that such negligence was the cause of the injury.

Thus it appears that the district judge was not misled in any way by the case of *Rivera* v. *Currá,* but held the doctrine of *res ipsa loquitur* to be applicable only in the sense in which the phrase was used by this court in the Currá case.

In *Scott* v. *London and St. Katherine Docks Co.,* 3 H. & C. 596, 601, 159 Reprint 665, the court speaking through Chief Justice Erle, said:

"There must be reasonable evidence of negligence.

"But where the thing is shewn to be under the management of of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

This statement of the rule has been widely quoted with approval and adopted in subsequent decisions. It has been described as the most apt and concise statement of the principle. It has become a legal classic. The courts have said that the rule has never been more accurately stated, and that it cannot be better stated in its generality. 45 C. J., page 1193, section 768, note 52, and cases cited.

Here the omnibus was shown to be under the exclusive management and control of defendant and of his servant. The accident was such as in the ordinary course of things would not have happened if defendant and his servant had used proper care. Plaintiff's showing was not limited to "the mere happening of an accident," nor to "the mere fact of injury." There was no question as to loss of control. There was little or no evidence tending to show either contributory negligence or an unavoidable accident. There was no testimony on behalf of plaintiff as to any specific act or omission of a sort that would exclude an application of the doctrine of *res ipsa loquitur*. There was no satisfactory explanation by defendant.

The undisputed fact, brought out in the testimony for defendant, that the employee stationed on the rear step did not see the victim until after he had been hit by the omnibus can hardly be regarded as operating to deprive plaintiff of the benefit of the rule. 45 C. J., page 1222, section 784, notes and cases cited. It does point to a specific omission as the possible or probable cause of the injury, and to that extent decidedly strengthens the prima facie case already established by plaintiff.

Thus did defendant (if we may borrow an expression from *Irvins* v. *Jacobs, supra,*) fill one hole by the digging of another.

We need not stop to quibble about questions of legal terminology. The result is the same whether based upon the principal of *res ipsa loquitur* or upon general rules of cir-

cumstantial evidence. Upon the hypothesis of *res ipsa loquitur*, there was nothing to overcome the presumption of negligence. Aside from any question of *res ipsa loquitur* in its technical sense, the district judge had no doubt as to the culpable negligence of defendant. And we have none. The error, if any, in quoting from the case of *Rivera* v. *Currá*, or in referring to the doctrine of *res ipsa loquitur* as applicable to the case at bar, was not reversible error.

Other contentions are that the sum of $5,000 awarded to plaintiff is excessive, that the court was influenced by passion, prejudice and partiality, and that the court erred in awarding costs and disbursements to plaintiff.

The amount of the judgment can hardly be deemed so clearly excessive as to justify a reduction thereof. We find no evidence of passion, prejudice, or partiality, and no abuse of discretion in awarding costs and disbursements to plaintiff.

The judgment appealed from must be affirmed.